Mr. LeFande for the appellant, Mr. Schifferle for the affilee. Good morning to the panel. If it pleases the Court, I'm Matthew LeFande. I am the appellant in this case. I reserve three minutes for rebuttal. Rule 56 in the Federal Rules of Civil Procedure is not a disfavored procedural shortcut, but the principal tool by which factually insufficient claims or defenses may be isolated and prevented from going to trial with the intended, unwarranted consumption of public and private resources. This is a key component of the Federal Rules as a whole in their goal of promoting the just, speedy, and inexpensive determination of every action, which, of course, is Rule 1. When a party makes factual allegations at summary judgment, in order for the Rule 1 and Rule 56 to remain effective, that party must necessarily be confined to those factual allegations as it proceeds to trial. The District Courts must be mindful of the shifting burden of proof regarding governing motions under Rule 56. And while the moving party initially bears the burden of proving the absence of a genuine issue of material facts, the non-moving party has a burden of proof. The moving party need only prove there is absence of evidence to support the non-moving party's case. In this regard, the District of Columbia makes an allegation that the appellant is terminated for emence. The appellant previously states that the litigation in the Griffith case is the cause. The District of Columbia counters that's the emence. Under Heffernan, which came out subsequent to the dismissal of this case, it is not what the plaintiff believes is the motivation for his termination. But instead, it is what is the motivation of the government in acting against the protected speech. And in this instance, we have the district court aligning itself with what was stated in the underlying, the original decision by this court in LaFondie, and saying LaFondie is speaking about the same subject matter which this court found to be protected speech. Mr. LaFondie, let me interrupt you and ask you a question. Do you have your September 19th email in front of you? Thank you. Would you pull that out? I want to ask you a question about it, okay? You got it? Okay, just one. September 19th. So the legal standard that I want you to have in mind when I ask you this question is, so even if an employee speaks as a citizen on a matter of public concern, the statement can still lose its First Amendment protection if, according to court, the statement, quote, impairs discipline by superiors or harmony among coworkers or has a detrimental impact on close working relationships, right? That's the legal standard. And we've said, and this court has said, this is especially important in the police department. So my question for you is that with respect to the September 19th email, can you explain to me why that email wouldn't offend that standard? That is, why that email, just reading the text of it, couldn't be viewed as impairing discipline by superiors or harmony among coworkers? Would you explain that to me? Thank you, Judge. You have to understand the context. No, no, no. I asked you about the text of the email. Don't talk to me about context. Here, let me tell you what I mean. Here's what this says. Okay. You say in this that the person you're writing this to, your superior, is more often than not the most immediate cause of arbitrary and unwarranted discipline against reserve officers. You say you're responsible for the arbitrary promotions process in which you promoted a cadre of persons to your personal liking. I could go on and on, but this email accuses him basically of violating police department standards and maybe even federal law. So why wouldn't that email flunk that part of the Pickering test? Because, well, first of all, I believe you're referring to the January 19th email, which appears at the bottom of the Appendix 48 and the top of the Appendix 49. I'm sorry. You're totally right. You're totally right. My mistake. Yeah. Now I'm sorry. I'm just a little confused about what you're talking about. Okay. My mistake. We have a private email, from one private email, to this person's personal private Yahoo email. And then we have a copy to a group of people, which are also part of a private email. And this illegal action, which we are calling them out on, is intended to bring this person back into compliance with the law, an unlawful act by a superior, and treating these people on fairly unwarranted disciplinary actions, arbitrary disciplinary actions, a promotion process which was completely devoid of merit. This is intended to benefit this organization, because the folks who are doing these things have gone so far beyond the pale of what is required to run a public organization like that. And this is not being brought up in a chain of command, where I say I disobey your order in front of the public because you're a bad person. This is a dialogue which is going on for months, in which these high-ranking people have willingly subscribed to a private email list to participate in that dialogue. And you will see numerous people of all the spectrum of the organization to-ing and fro-ing about what is wrong with this organization. That is the purpose of this email dialogue. And people are pointing fingers at one another. And there's strident tone here. And there are a lot of folks who are willingly arguing about this organization. If we go back and look at the Griffith case, if we look at the Griffith opinion, there is an enormous body of law there that was sort of amorphous at the time that I brought that lawsuit. People did not have a clear idea of what it was that this organization did, what authority it had, and what we should even call the people who are participating. Can we call them members? Do they have the authority to deprive somebody else of their liberty? All of this stuff was very much still up in the air in 2008 when these things were going on. And folks are willingly subscribing to an email list to have it out with one another, just the same way folks who are part of community organizations, the people who subscribe to email lists or individual police district organizations, to sit there and talk about what is wrong with this thing. I cannot think of a greater, more important function of these email lists than to hash it out with these folks, toing and froing, and I certainly got my share of abuse on these things as much as anyone else, about what is wrong here and how do we fix it. And to say that a police official subscribes to a private email list and sticks themselves in the fray of this and then starts getting upset because, guess what, we're not happy with what you're doing, to say that that is an appropriate, that that somehow is detrimental to the discipline of the police department, I just respectfully disagree on that. Oh, I wasn't stating that. I was just asking you a question. That was all. Do you have anything else? You're into your rebuttal time. I'm into my rebuttal time. Let me sit down. All right. Good morning, and may it please the Court. Carl Schifferle for the District of Columbia. It is our first argument that Mr. LaFonde is not entitled to ask this Court to review a non-final decision, that is, the interlocutory denial of summary judgment. It's pretty clear the district judge tried to arrange this so that it would be appealable, reviewable, correct? That may have been the district court's. So she did what she could and it looks like it's adequate to provide a final judgment. Well, we disagree. That is, the decision that she issued was one that dismissed the case with prejudice based on Mr. LaFonde's intention to produce no evidence at trial, and we think that is the decision which is the final decision, the denial of summary judgment. Previously, as this Court explained and felt applying the Supreme Court's decision in Ortiz v. Jordan, that interlocutory denial of summary judgment is not reviewable. But I can go on to the merits. I'm sorry, go ahead. What's interlocutory? The denial of summary judgment. It is an interlocutory decision that occurred prior to the entry of the final judgment, which was the dismissal of the case with prejudice. But didn't you move to dismiss the case? Didn't the district move to dismiss the case? We did, Your Honor. When the court essentially directed us to after saying it would not allow the district. But you agreed. The district court said, as I recall, the district court said, were you counsel in the district court? No, Your Honor. As district's counsel, if they agreed with Mr. LaFonde that there were no factual issues that needed trial, he agreed and she said, well, why don't you move to dismiss, and he did. We agreed that he was terminated for the e-mails that were sent. That's not what I'm asking you. I'm asking you about the district move to dismiss, and the district court granted it with prejudice in order to facilitate this appeal. Perhaps, but whether this court actually has jurisdiction to review the district court's decision, it is jurisdictional. It's for this court to determine. So what did you have to say about the public citizen case in 2007? I'm sorry. I read from it. Denial of a motion for summary judgment typically is not a final order, but it may be reviewed on appeal where it is accompanied by a final order disposing of all issues before the district court. That is not consistent with Ortiz v. Jordan. There that was the same issue when the officers in Ortiz argued that the court could review its denial of summary judgment after a trial and a final judgment on the merits against the officers, and the Supreme Court said in Ortiz that earlier denial of summary judgment is not reviewable, even though there is a final judgment in the form of a jury verdict against the officers. And that was your point? Because that post-states our public citizen case. Correct. Correct, Your Honor. On the substance, though, if we talk a minute about the substance, assuming there's something before us that is reviewable on the substance, your argument, and I want you to flesh this out, is that if we apply the balancing test that the government's interest here outweighs whatever private interests that might have been, that he might have had in expressing his views. Correct, Your Honor. First of all, I would point out on that particular factor when Mr. LaFonde moved for summary judgment, but below he made no argument on this particular factor, even though it's his burden as the plaintiff and the summary judgment movement to make the requisite showing. And all he said was that the district waived this particular factor by not asserting in its own summary judgment motion. Of course, that's not correct. The district doesn't concede or waive a point just because it doesn't affirmatively move for summary judgment. That was his only argument in his motion for summary judgment. And so, therefore, it's not error for the district court not to grant summary judgment for Mr. LaFonde. I would also point out on the procedural posture we're in, it's where Mr. LaFonde is asking this court to basically direct that he be entitled to summary judgment. The summary judgment standard requires that all reasonable inferences be drawn in the district's favor, that the plaintiff has the burden, again, not only as the plaintiff, but as the summary judgment movement. What about Judge Kavanaugh's question? Instead of talking about waiver, why don't you just answer his question? Okay. So, viewing the evidence in the district's favor, we submit that it does at least prevent Mr. LaFonde from being entitled to judgment as a matter of law because of the concern about discipline and maintaining workplace harmony, maintaining officer morale. What about the point he just made? He said the point he just made is he was, yeah, the language is tough, but he was calling out serious problems, and it's important that that be done in the public interest. Well, we don't concede that he spoke on the matter of public concern or that he spoke as a citizen. No, no, no. Assuming he did. But assuming he did, nevertheless, that's where this balancing test comes in. So what is it about his e-mails that remove it from First Amendment protection? Is it the tone? There's the tone and the language that is extremely derogatory, derisive, contemptuous. He talks about it would be better if a sergeant was knocked over and rolled on his side towards the crowd, that the sergeant would be more useful doing that. He talked about the superiors suffering from full-blown delusions of adequacy. He mocked them. He made fun of them. He refused their requests for information. His goal, he said explicitly, was to embarrass his superiors and, in fact, to force one of them to resign. This is in the context of his own ongoing personnel disputes with his superiors. He had been suspended and was under suspension at the time. It is clear that everything that was said was in the context of his own personal disputes. He had a clear personal motive here. This confrontation through these e-mails were being aired in front of all the other reserve officers and superiors. So this confrontation is not just a one-on-one, but is in front of, literally, or at least in the form of e-mail, in front of all the other reserve officers. And that is particularly dangerous to the ability of the department to exercise authority and to maintain discipline. And you, folding back in the procedural posture now, you said he would not be entitled to summary judgment on that, on his claim, given what you just said. But you're, in effect, asking for us to grant you summary judgment on that claim. No, Your Honor. All we have to show is that- We'll go affirm the dismissal. Correct? You want the dismissal affirmed? Well, the dismissal is clearly correct. I mean, I don't think there's any dispute that because he- But you don't want to go back for more proceedings, do you? Absolutely not. And that's why- That's why. Right. That's why. Well, first of all, we want the court just to look at whether the dismissal was proper, and it was because he presented no evidence. But even if he can review that earlier interlocutory decision, it's just the denial of summary judgment. And if the denial of summary judgment was proper, then that's the end of the case. If the denial of summary judgment was proper, then the dismissal is proper, and we just affirm without- Right. Flipping the burden as we normally would if you had received summary judgment. Right. And there would be no reason to remand because Mr. LaFonde made clear he's going to present no evidence at trial, so there would be no point in a remand. So he would have to conclusively prove each and every element of his First Amendment claim, including not just the factors that we spoke about, but also causation as well. I mean, that's clearly a jury question. It's not something that would be appropriate for summary judgment. As well as the Minnell liability would have to establish, again, as a matter of law, even drawing all reasonable inferences in favor of the district, that he was entitled to summary judgment on that element as well, which he hasn't met. So considering all the factors, the fact that he would have to conclusively prove all of them in order to reverse the denial of summary judgment, we would submit that there was no error here. Unless the Court has another question. Okay. Okay. Thank you. Okay. Thank you. How much time did Ms. Shimabukuro have? Go ahead. Touching on Judge Kavanaugh's question, we do see here that the District of Columbia is attempting to relitigate its loss at summary judgment on this point, which was that the District Court stated that this speech is in the public's interest. And then in the denial of my subsequent motion for summary judgment, the Court says these emails were made in the course of LaFondie's official duties. And in that regard, I have stated over and over again, this is a hard legal issue that this Court can sink its teeth into. And this conflation of these other things have not been preserved for appeal by the District of Columbia. They have not made the point that this was detrimental to the conduct. They can't make that point because these folks who say that they were the subject of this abuse were willing subscribers to a private dialogue. They came in and said, I want to sit here and I want to participate in this dialogue, which has nothing to do with the police department. This is private persons having their word. Okay. I'm sorry. You can finish your sentence. I'm done. Okay. Thank you. And for these reasons and the reasons substated in my brief, I ask that the Court reverse the decision of the District Court and direct the Iberian State to the Metropolitan Police Department. Thank you. Thank you. The case is submitted.
judges: Tatel, Kavanaugh, Ginsburg